**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                              )
**DAPHNE LARIVAUX,**                          )
                                              )
        **Plaintiff,**                        )
                                              )         **Civil Action No.**
        **v.**                                )         **12-11172-FDS**
                                              )
**BANK OF AMERICA, N.A., et al.,**            )
                                              )
        **Defendants.**                       )
_____)


**MEMORANDUM AND ORDER ON MOTION TO DISMISS**
**AND MOTION FOR JUDGMENT ON THE PLEADINGS**

**SAYLOR, J.**

        This action arises from a home mortgage foreclosure.  Plaintiff Daphne Larivaux has

brought suit against Bank of America, N.A.; Mortgage Electronic Registration Systems, Inc.

("MERS"); and OneWest Bank, F.S.B., for alleged violations of law stemming from proceedings

to foreclose on her home.  Plaintiff essentially seeks to forestall an eviction proceeding brought

against her by Bank of America, and to void the underlying foreclosure and sale.

        Defendants MERS and OneWest Bank have moved to dismiss pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief can be granted.  Although defendant Bank

of America initially answered the complaint, it has now moved for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c) on the grounds set forth in the motion to dismiss.  For the

reasons set forth below, the motion of defendant MERS will be granted; the motion of defendant

OneWest Bank will be granted in part and denied in part; and the motion of defendant Bank of

America will be granted in part and denied in part.

# I.    Background

## A.    Factual Background

On June 13, 2005, Daphne Larivaux and her then-husband, Froido Fayette, purchased a

home at 7 Fremont Street, Malden, Massachusetts.  (Pl. Opp. To Def. Mot. to Dismiss at 1-2).[1]

On September 22, 2006, the Fayettes refinanced their mortgage through MortgageIT, Inc.

(Compl. ¶ 6).  The mortgage documents named Mortgage Electronic Registration Services, Inc.

as the mortgagee, as nominee for MortgageIT and its successors and assigns.  (Compl. ¶ 6).

As part of the refinancing process, the Fayettes signed a note in the amount of $414,000.

(Def. Mem. in Supp. Mot. to Dismiss, Ex. A).[2]  That document identified the "Lender" as

MortgageIT, Inc. and contains the following clause:

> I understand that Lender may transfer this Note.  Lender or anyone who takes this
> Note by transfer and who is entitled to receive payments under this Note is called
> the "Note Holder."

(Def. Mem., Ex. A).  The Fayettes also signed a mortgage, which contains the following

clause:

> The Note or a partial interest in the Note (together with this Security Instrument)
> can be sold one or more times without prior notice to Borrower.

(Def. Mem., Ex. B).  The mortgage was recorded in the Middlesex County Registry of Deeds.

(Def. Mem., Ex. B).

In 2008, the Fayettes fell behind in their mortgage payments, although they made at least

---

[1]  At the time they purchased the home, Ms. Larivaux and Mr. Fayette were married.  They have since
divorced.  For the sake of brevity, and because it is unclear from the pleadings at what point the divorce took place,
the Court will refer to Larivaux and Fayette as "the Fayettes."

[2]  Although plaintiff does not attach a copy of this document to the complaint, the Court may consider it—as
well as other documents referenced in this Order—because they were referred to in the complaint.  *See Rederford v.
US Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009).

one large payment of $6,000 in an attempt to make the loan current.  (Compl. ¶ 7).

The pleadings are somewhat confusing as to who held the mortgage at that time.  Plaintiff

does not allege, and defendants have not argued, that MortgageIT or MERS assigned the

mortgage to another party prior to 2008.[3]  However, the complaint refers to two other banks that

had some involvement with the mortgage in 2008 and 2009:  IndyMac Bank and OneWest Bank.

While the complaint does not identify the relationship between IndyMac Bank and OneWest,

plaintiff elsewhere states that OneWest Bank is the successor to IndyMac Bank, a bank whose

assets were seized by the FDIC in 2008 and transferred to OneWest on March 19, 2009.  (Pl.

Opp. at 2-3).

Following the $6,000 payment, the complaint alleges that OneWest Bank changed the

Fayette's monthly payment to $4,000 a month.  (Compl. ¶ 8).[4]  The Fayettes could not afford this

monthly payment, and the mortgage went into default.  (Compl. ¶ 8).

On January 21, 2009, IndyMac Bank sent the Fayettes a notice of default.  (Def. Mem.,

Ex. D).  The notice of default identified the current mortgage holder as "IndyMac Federal Bank."

(Def. Mem., Ex. D).  Shortly thereafter, on February 4, 2009, MERS, acting as holder of the

Fayette's mortgage, assigned the mortgage and "the note and claim secured thereby" to

OneWest.  (Def. Mem., Ex. C).

On January 12, 2010, OneWest brought an action in state court under the Soldiers and

---

[3] The Court notes that, in an earlier motion to dismiss, former defendant MortgageIT stated that it sold the loan in the secondary market in October 2006.  However, the only pleadings that are relevant to the motions currently before the Court are those beginning with the second amended complaint, which was filed after MortgageIT's brief.

[4] Defendants point out that "plaintiff refers to IndyMac and OneWest interchangeably in the complaint," and that, although plaintiff makes certain allegations about OneWest's actions in 2008, "OneWest did not even commence operation until March 2009."  (Def. Mem. at 7 fn. 8).  For purposes of this motion, the Court will accept the facts as set forth in the complaint.

Sailors Act against the Fayettes. (Compl. ¶ 9). The complaint alleges that OneWest did not hold the mortgage note at the time. (Compl. ¶ 9). It further alleges that OneWest did not offer the Fayettes an opportunity to apply for a HAMP modification prior to initiating foreclosure proceedings. (Compl. ¶ 9).[5]

In January 2010, OneWest foreclosed on the Fayette's home, and thereafter conveyed the property to Bank of America through a foreclosure deed. (Compl. ¶ 11).

### B.    Procedural Background

On May 26, 2010, plaintiff Daphne Larivaux, along with her former husband, Froido Fayette, filed suit against Bank of America in Middlesex Superior Court. The suit was dismissed without prejudice for failure to serve process. On September 9, 2011, the Fayettes filed an amended complaint, which added claims against MortgageIT and OneWest. The amended complaint asserted four causes of action against all three defendants: (1) declaratory relief, (2) "consumer fraud and deceit," (3) "violations of underwriting standards," and (4) unfair and deceptive conduct in violation of Mass. Gen. Laws ch. 93A.

The Fayettes served process on MortgageIT on June 4, 2012. On June 29, MortgageIT removed this action to federal court. On July 6, Mortgage IT moved to dismiss all claims against it. Larivaux opposed the motion, and filed a motion to further amend the complaint.

On November 2, 2012, this Court issued an order dismissing all claims against

---

[5] In February 2009, the Secretary of the Treasury established the Home Affordable Modification Program ("HAMP"), a federal initiative designed to provide incentives for lenders to agree to modification of home loan agreements in lieu of foreclosure. The goal of HAMP is to provide relief to borrowers who have defaulted or are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt. *See* U.S. Dep't of the Treasury, Supplemental Directive 09-01, *available at* https://www.hmpadmin.com/portal/ programs/docs/hamp_servicer/sd0901.pdf. Under HAMP, participating loan servicers are provided with incentive payments for each permanent mortgage-loan modification completed. *Id.* at 23. These modifications proceed under a uniform process designed to identify eligible borrowers and render their debt obligations more affordable and sustainable. *Id.* at 1.

MortgageIT and granting plaintiff's motion to amend the complaint as to the other defendants. An amended complaint was filed against Bank of America, OneWest Bank, and MERS on November 16, 2012.  The complaint includes counts of unlawful foreclosure, breach of the covenant of good faith and fair dealing, unjust enrichment, negligence, and unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A.

 On March 4, 2013, this Court issued an order to plaintiff Fayette to show cause in writing by March 22 why his claims should not be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b).  Fayette did not submit any statement.  Fayette's claims were dismissed on May 30, 2013, for failure to prosecute.

## II.  <u>Standard of Review</u>

On a motion to dismiss pursuant to rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss."  *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).  It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole."  *Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50,

54-55 (1st Cir. 2006).  Because a Rule 12(c) motion "calls for an assessment of the merits of the

case at an embryonic stage, the court must view the facts contained in the pleadings in the light

most favorable to the nonmovant and draw all reasonable inferences therefrom to the

nonmovant's behoof."  *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir.

2006).

## III.   Analysis

As a threshold matter, plaintiff does not appear to assert any claims against MERS.  The

claims all arise out of conduct that occurred during the events leading up to the foreclosure of the

home.  Although she alleges that MERS did not have the authority to assign the mortgage to

OneWest, she does not plead with specificity any allegations of wrongdoing on the part of

MERS with regard to the foreclosure.  Accordingly, the claims against MERS will be dismissed

for failure to state a claim for which relief can be granted.

As to the remaining defendants, the Court will evaluate the sufficiency of each of

plaintiff's claims separately.

### A.   Wrongful Foreclosure

Count 1 alleges that OneWest conducted an invalid foreclosure sale, rendering Bank of

America's title to the home invalid.  (Compl. ¶¶ 17-28).  Plaintiff contends that MERS had no

authority to assign the mortgage and note to OneWest on February 4, 2009, because MERS was

not the owner of the note.  As a result, plaintiff contends that the assignment from MERS to

OneWest was invalid, thus rendering the foreclosure invalid.  Plaintiff also contends that the

notice of the right to cure was defective because it misidentified the mortgagee.

At this stage, the Court need not reach the question of whether the assignment was valid,

because plaintiff has set forth a claim that is plausible on its face that the written notice to cure

was defective.  Pursuant to Mass. Gen. Laws ch. 244 § 35A, the written notice of the right to

cure must include "the name and address of the mortgagee, or anyone holding thereunder . . . ."

Mass. Gen. Laws ch. 244 § 35A(h)(4).[6]  The notice sent to plaintiff on January 21, 2009, lists

IndyMac Bank as the mortgage holder as of that date, and as the entity to be contacted

concerning attempts to cure.  However, according to all parties, the mortgage was initially

granted to MERS as nominee for MortgageIT.  Nowhere in the pleadings is there any indication

that the mortgage was subsequently re-assigned prior to May 2009.  Thus, the pleadings and

exhibits presently before this Court do not lay out a valid chain of assignment whereby IndyMac

became the lawful holder of the mortgage prior to January 21, 2009.

Obviously, as the litigation progresses, defendants may be able to produce sufficient

documentation to demonstrate that IndyMac was in fact the holder of the mortgage as of January

2009.  However, on a motion to dismiss, the Court must accept all facts as set forth in the

pleadings.  Taken in the light most favorable to the plaintiff, the pleadings suggest that the notice

of a right to cure was sent by IndyMac, and identified IndyMac as the lawful mortgage holder, at

a time when IndyMac was not the mortgage holder.  If true, this defect in the notice of right to

cure might be enough to render the notice deficient, and the subsequent foreclosure invalid.  It

may well prove to be untrue when the evidence is fully developed, but that is not the issue before

the Court.

In short, at this early stage, the complaint alleges sufficient factual allegations to raise a

right to relief for unlawful foreclosure above the speculative level.  Accordingly, defendants'

---

[6] The cited provision of Mass. Gen. Laws ch. 244 § 35A was included in the statute in 2009, although at the time it was labeled § 35A(c)(4).

motions as to plaintiff's unlawful foreclosure claim will be denied.

### B.        Breach of the Covenant of Good Faith and Fair Dealing

Count 2 of the complaint asserts a claim that defendants breached the implied covenant of good faith and fair dealing.  More specifically, plaintiff alleges that, by refusing to speak to her about loan-modification options, defendants failed to negotiate in good faith, and failed to provide her with foreclosure alternatives as required by HAMP.

Every contract includes an implied covenant of good faith and fair dealing.  *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569-70 (2010).  The covenant requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to its fruits of the contract."  *Id.* at 570.  The covenant is not, however, meant to be "invoked to create rights and duties not otherwise provided for in the existing contractual relationship."  *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

The complaint does not allege that defendants breached any provisions of the mortgage contract.  Nor does it suggest that the terms of the contract required defendants to provide plaintiff with an opportunity for loss mitigation or foreclosure alternatives.  Indeed, the terms of the mortgage itself indicate that, given plaintiff's admitted default, OneWest was entitled to exercise the foreclosure rights provided to it by the terms of the mortgage.

To the extent that plaintiff suggests that HAMP required defendants to discuss foreclosure alternatives with plaintiff, that argument is also unavailing.  The covenant of good faith and fair dealing "only governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached."  *Kirtz v. Wells Fargo Bank N.A.*, 2012 U.S. Dist. LEXIS 170357, at *10-11, (D. Mass. Nov. 29, 2012).  Plaintiff has not alleged that

defendants were obligated under any contractual obligation to comply with the terms of HAMP. To the extent that plaintiff bases her claim on unspecified contracts that may exist between defendants and Fannie Mae relating to participation in the HAMP program, courts in this district have repeatedly dismissed similar claims because mortgagors are neither parties to such contracts nor intended beneficiaries of them.  *See, e.g., Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d 172, 185 (D. Mass. 2011).  Therefore, there can be no breach of the implied covenant of good faith and fair dealing based on any alleged HAMP violation.

Accordingly, the complaint fails to state a claim for breach of the covenant of good faith and fair dealing, and defendants' motions will be granted as to this claim.

## C.   Unjust Enrichment

Count 3 of the complaint asserts a claim for unjust enrichment.  Unjust enrichment is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value.  *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 57 (1st Cir. 2009).

The complaint does not set forth with any particularity the basis for the unjust enrichment claim.  Rather, it contends that the claim is based on "defendants' wrongful acts and omissions, including but not limited to failing to adhere to the conditions precedent to foreclosure and by failing to negotiate in good faith."

Plaintiff does not allege that she made any payments that she was not required to make under the mortgage.  Thus, she cannot claim that OneWest was unjustly enriched by those payments.  Instead, her only possible claim for unjust enrichment rests on a finding that defendants did not have the authority to foreclose on her home, and thus were unjustly enriched by their unlawful foreclosure.

Courts in this district have previously held that unjust enrichment is "an equitable remedy, and it is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law."  *Foley v. Yacht Mgmt. Group*, 2011 U.S. Dist. LEXIS 101476 (D. Mass. Sept. 9, 2011) (citing *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (internal quotations omitted).  If plaintiff is able to prove that defendants did not have the authority to foreclose on her home, her unlawful foreclosure claim will provide an adequate remedy at law.  Accordingly, defendants' motions will be granted as to the claim of unjust enrichment.

### D.    Negligence

Count 4 asserts a claim for negligence based on defendants' alleged violation of HAMP guidelines.  To succeed in an action for negligence, a plaintiff must prove four elements:  (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proof that the breach was the proximate cause of plaintiff's injuries; and (4) actual damage or injury.  *Heinrich v. Sweet*, 308 F.3d 48, 62-63 (1st Cir. 2002).[7]

---

[7] The complaint alleges that defendants' negligence caused plaintiff to "suffer economic losses as well as other damages."  (Compl. ¶ 41).  Under Massachusetts law, the "economic loss rule" precludes plaintiffs from bringing claims of negligence based on purely economic losses.  *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993) ("[P]urely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.")  Without more specific allegations of "other" damages, it appears to this Court that plaintiff's claim would likely be barred by the economic loss rule.  However, because the negligence claim will be

As a preliminary matter, the Court notes that Bank of America did not acquire an interest in plaintiff's home until after the foreclosure was completed.  Although plaintiff does not specifically allege a particular HAMP violation, she appears to suggest that OneWest's failure to provide her with foreclosure alternative opportunities prior to the foreclosure sale constituted a violation of HAMP guidelines.  Plaintiff nowhere alleges that Bank of America was involved in the alleged violation.  Accordingly, Bank of America's motion for judgment on the pleadings will be granted with respect to the negligence claim.

The viability of plaintiff's negligence claim against OneWest depends in part on whether OneWest owed a legal duty to her.  Defendants contend that plaintiff cannot succeed on this claim because the creation of HAMP did not give rise to any new duty by mortgagees or loan servicers to mortgagors.

The majority of courts that have considered this issue have determined that HAMP does not provide or imply a private cause of action.  *See, e.g. Brown v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 36235 (D. Mass. March 31, 2011).  As a result, courts in this district have repeatedly held that a plaintiff cannot state a claim for negligence arising out of a violation of HAMP or its regulations.  *See Camara v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 317 (D. Mass. Jan. 2, 2013) (collecting cases).

Plaintiff contends that a defendant's violation of a HAMP regulation may nonetheless stand as evidence of a breach of duty owed under state law.  It is true, as plaintiff points out, that under Massachusetts law a statutory or regulatory violation can supply evidence of negligence.  *See Berish v. Bornstein*, 437 Mass. 252, 273, 770 N.E. 2d 961 (2002); *Campbell v. Leach*, 352

---

dismissed on other grounds, the Court need not reach this issue.

Mass. 367, 371 (1967).  But, as another court in this district has explained, "while [the] violation of [HAMP guidelines] may provide evidence of a duty *otherwise owed*, it does not create such a duty in the first place."  *Brown*, 2011 U.S. Dist. LEXIS 36235 at *4.

The amended complaint does not set forth any facts—other than those alleging a HAMP violation—in support of the contention that any defendant violated a duty owed to her under state law.  Because no new duty of care is established by the HAMP guidelines, plaintiff has not set forth a plausible claim for negligence.  Accordingly, defendant OneWest's motion to dismiss will be granted with respect to the negligence claim.

### E.      Unfair and Deceptive Business Practices - Chapter 93A

Finally, Count 5 asserts a claim for unfair and deceptive business practices under Mass. Gen. Laws ch. 93A.  Defendants contends that plaintiff has not adequately pleaded a chapter 93A violation based on OneWest's supposed failure to follow HAMP guidelines.

To begin, the Court notes that the complaint appears to allege a number of violations of chapter 93A, only one of which refers to a failure to offer a HAMP modification.  The chapter 93A claim could plausibly be read as alleging additional violations that are unrelated to HAMP guidelines.  However, plaintiff does not oppose defendant's motion on this basis, and does not press allegations concerning any of these violations in her opposition.  Instead, plaintiff asserts that she has met the requirements for stating a HAMP-based chapter 93A violation.  Accordingly, the Court will focus on the alleged violation of the HAMP guidelines.

This Court has previously held that even though no private right of action exists under HAMP, a violation of the HAMP guidelines may, under some circumstances, provide a basis for a claim under chapter 93A.  *Markle*, 844 F. Supp. 2d at 185.  Courts in this district have set forth

a three-part test when addressing a chapter 93A claim based on a HAMP violation that includes

the following inquiries:

> whether (1) plaintiffs have adequately pleaded that defendant violated HAMP;
> (2) those violations are of the type that would be independently actionable
> conduct under ch. 93A (in other words, whether the violations are unfair or
> deceptive); and
> (3) recovery pursuant to chapter 93A is compatible with the objectives and
> enforcement mechanisms of HAMP.

*Ording v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 83269, at *21-22 (D. Mass.

Jan. 10, 2011).

      Here, the complaint fails at the first requirement.  While it is true that a mortgage servicer

participating in HAMP may not proceed with a foreclosure sale on a property in default until the

borrower has been evaluated for HAMP eligibility, not all mortgage servicers are bound by the

requirements of HAMP.  Certain mortgage lenders—namely those servicing mortgages owned or

guaranteed by Fannie Mae—must participate in HAMP.  Other lenders servicing mortgages not

owned or guaranteed by Fannie Mae may elect to participate in HAMP by executing a servicer

participation agreement with Fannie Mae.  However, participation in HAMP cannot be

presumed.

      The complaint does not allege that any of the defendants were participating in HAMP at

the time of foreclosure.  It does not allege that defendants were subject to the HAMP guidelines,

and therefore does not adequately allege that defendants have violated those guidelines.

      Even if this Court were to presume that defendants' participation in the HAMP program

is implicit in the allegations that defendants violated the HAMP guidelines, plaintiff has not

pleaded any unfair or deceptive practices that would constitute independently actionable conduct

under chapter 93A.  A plaintiff claiming a HAMP-based chapter 93A violation generally must

plead "improper behavior beyond the impropriety inherent to a HAMP violation itself." *Speleos v. BAC Home Loans Servicing, L.P.*, 824 F. Supp. 2d 226, 235 (D. Mass. 2011). In other words, a complaint must allege not only that there has been a violation, but also that the violation was unfair or deceptive. *See, e.g., Morris v. BAC Home Loans Serv., L. P.*, 775 F. Supp. 2d 255, 259 (D. Mass 2011). Allegations that a defendant made misrepresentations regarding a plaintiff's rights under HAMP, a plaintiff's eligibility for a loan modification, or the status or likely outcome of a plaintiff's HAMP application have all been found sufficiently unfair or deceptive to state a claim under chapter 93A. *Markle*, 844 F. Supp. 3d at 186.

Here, the complaint essentially alleges that defendants failed to offer her a HAMP modification before referring her home to foreclosure. That allegation may sufficiently state a violation of the HAMP guidelines. However, plaintiff has not pleaded any additional facts suggesting that defendants engaged in unfair or deceptive business practices. Plaintiff has not alleged "any misrepresentations, broken promises, or persistent processing mistakes and/or delays" by defendants. *Speleos*, 824 F. Supp. 2d at 236. Nor has plaintiff alleged that the alleged HAMP violation was either knowing or willful. *See id.* (finding a genuine issue of fact where the complaint alleged a chapter 93A violation based on a mortgage servicer's decision to proceed with a foreclosure even though it was repeatedly informed of plaintiff's application for a modification and of the impending HAMP violation).

The allegation that defendants failed to offer plaintiff a HAMP modification, without more, does not rise to the level of a chapter 93A violation. Accordingly, defendants' motions will be granted as to plaintiff's chapter 93A claim.

14

**III.**   **Conclusion**

For the reasons set forth above, the motion of defendant Mortgage Electronic

Registration Systems, Inc. is GRANTED, the motion of defendant OneWest Bank FSB is

GRANTED in part and DENIED in part, and the motion of defendant Bank of America, N.A is

GRANTED in part and DENIED in part.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 6, 2013