**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                          )
**DAPHNE LARIVAUX,**                      )
                                          )
        **Plaintiff,**                    )
                                          )        **Civil Action No.**
        **v.**                            )        **12-11172-FDS**
                                          )
**BANK OF AMERICA, N.A., et al.,**        )
                                          )
        **Defendant**                     )
                                          )
_____)

**MEMORANDUM AND ORDER ON MOTION**
**FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

        This action arises from a home mortgage foreclosure.  Plaintiff Daphne Larivaux has

brought suit against Defendants Bank of America, N.A., and OneWest Bank, F.S.B., for alleged

violations of law stemming from proceedings to foreclose on her home.  Plaintiff essentially

seeks to forestall an eviction proceeding brought against her by Bank of America, and to void the

underlying foreclosure and sale.

        Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.  For the

reasons set forth below, defendants' motion will be granted.

**I.      Background**

        Except where otherwise noted, the facts set forth below are not disputed.

        **A.      Factual Background**

        On June 13, 2005, Daphne Larivaux and her then-husband Froido Fayette purchased a

home at 7 Fremont Street, Malden, Massachusetts.  (Pl. Opp. at 1).  On September 22, 2006,

Larivaux and Fayette refinanced their mortgage through MortgageIT, Inc.  (Def. SMF ¶¶ 1-3).

The mortgage documents named Mortgage Electronic Registration Services, Inc. ("MERS") as the mortgagee, as nominee for MortgageIT and its successors and assigns. (Def. SMF ¶ 3). The mortgage named MortgageIT as the "Lender" and granted it the statutory power of sale. (Def. Mot. Summ. J., Ex. A). In conjunction with the mortgage, Larivaux and Fayette executed a note in the amount of $414,000. (Def. Mot. Summ. J., Ex. A).

On December 1, 2006, MortgageIT transferred the servicing rights of the loan to IndyMac Bank, F.S.B. (Def. SMF ¶ 5). On February 2, 2007, MortgageIT sold the loan to Countrywide Bank, FSB; IndyMac retained the servicing rights. (*Id.*). The Office of Thrift Supervision closed IndyMac Bank on July 11, 2008, and chartered IndyMac Federal Bank, FSB, which assumed servicing responsibilities for the loan. (Def. SMF ¶¶ 8-10).

In 2008, Larivaux and Fayette fell behind in their mortgage payments. (Def. SMF ¶ 14). As a result, the mortgage went into default. (*Id.*). On January 21, 2009, IndyMac Federal Bank sent a written notice to cure to Larivaux and Fayette. (Def. SMF ¶ 15; Def. Mot. Summ. J., Ex. D). Among other information, the notice identified IndyMac Federal Bank as the "mortgage holder" and provided its address and telephone number. (Def. Mot. Summ. J., Ex. D; *see* Pl. SMF ¶ 3). The notice did not mention MERS, the mortgagee. (Def. Mot. Summ. J., Ex. D). Larivaux and Fayette never cured the default. (Def. SMF ¶ 16).

On March 19, 2009, OneWest Bank, F.S.B. acquired the assets and servicing rights of IndyMac Federal Bank and became the servicer of the loan. (Def. SMF ¶ 11). On May 6, 2009, MERS executed an assignment purporting to transfer the mortgage to OneWest Bank; MERS recorded the assignment in the Middlesex County Registry of Deeds. (Def. SMF ¶ 12; Def. Mot. Summ. J., Ex. C). The note appears to have been indorsed in blank by Countrywide on an

undetermined date.  (Pl. SMF ¶ 6; Def. Mot. Summ. J., Ex. A).  Defendants assert that OneWest Bank was the holder of the note as of May 2009.

In January 2010, OneWest Bank conducted a foreclosure action, and Bank of America purchased the property.  (Def. SMF ¶ 17).  Bank of America has since brought an action in state court to evict Larivaux from the property.

### B.    Procedural Background

On May 26, 2010, Larivaux, along with her former husband, filed suit against Bank of America in Middlesex Superior Court.  The suit was dismissed without prejudice for failure to serve process.  On August 29, 2011, Larivaux and Fayette filed an amended complaint, which added claims against MortgageIT and OneWest.  The amended complaint asserted four causes of action against all three defendants:  (1) declaratory relief, (2) "consumer fraud and deceit," (3) "violations of underwriting standards," and (4) unfair and deceptive conduct in violation of Mass. Gen. Laws ch. 93A.  (Compl. ¶¶ 17-51).  Plaintiffs served process on MortgageIT on June 4, 2012.

On June 29, 2012, MortgageIT removed this action to federal court.  On July 6, MortgageIT moved to dismiss all claims against it.  Larivaux opposed the motion and filed a motion to further amend the complaint.

On November 2, 2012, this Court issued an order dismissing all claims against MortgageIT and granting plaintiff's motion to amend the complaint as to the other defendants.  Larivaux filed an amended complaint against Bank of America, OneWest Bank, and MERS on November 16, 2012, alleging unlawful foreclosure, breach of the covenant of good faith and fair dealing, unjust enrichment, negligence, and unfair and deceptive practices in violation of Mass.

Gen. Laws ch. 93A.

On February 5, 2013, MERS and OneWest Bank moved to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Bank of America,

on April 16, 2013, moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  After

a hearing, on June 6, 2013, this Court granted the motion to dismiss as to MERS, granted in part

and denied in part the motion to dismiss as to OneWest Bank, and granted in part and denied in

part Bank of America's motion for judgment on the pleadings.  The sole claim remaining against

Bank of America and OneWest Bank is for unlawful foreclosure.

On March 4, 2013, this Court issued an order to Fayette to show cause by March 22 why

his claims should not be dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute.  Fayette

did not submit any statement, and this Court dismissed his claims on May 30, 2013.

## II.    <u>Standard of Review</u>

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotations omitted).  Summary judgment is appropriate when "there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the

evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact

finder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco*

*Co.*, 896 F.2d 5, 8 (1st Cir. 1990).  In evaluating a summary judgment motion, the Court

indulges all reasonable inferences in favor of the non-moving party.  *O'Connor v. Steeves*, 994

F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is

made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

## III.   **Analysis**

It is undisputed that Larivaux and Fayette failed to make their mortgage payments, and that they are in default.  The disputed issue is whether defendants have complied with the law and whether the foreclosure was therefore valid.

In Massachusetts, when a mortgage grants the holder the power of sale, "the mortgagee may foreclose without obtaining prior judicial authorization."  *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 288 (1st Cir. 2013).  It may do so "upon any default in the performance or observance of the mortgage, including . . . nonpayment of the underlying mortgage note." *Eaton v. Fed. Nat'l Mortg. Ass'n*, 462 Mass. 569, 580 (2012).

Due to the "substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight," Massachusetts law requires that "one who sells under a power [of sale] must follow strictly its terms.  If he fails to do so there is no valid execution of the power, and the sale is wholly void."  *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 646 (2011) (quoting *Moore v. Dick*, 187 Mass. 207, 211 (1905)).  One requirement is that only the present holder of the mortgage—the mortgagee, or his executors, administrators, successors, or assigns—holds the statutory power of sale.  *Id.* at 647-48.  Thus, where the present holder is not the original holder of the mortgage, a valid assignment of the mortgage must have occurred prior to the foreclosure proceedings.  *Juarez v. Select Portfolio Servicing, Inc.*, 708

F.3d 269, 279 (1st Cir. 2013).  However, in foreclosures commenced before June 22, 2012, the

mortgagee need not have held the underlying note in order to exercise the statutory power of

sale.  *See Eaton*, 462 Mass. at 584, 588-89.

Massachusetts law further provides that mortgagors are entitled to be given an

opportunity to cure a mortgage default.  Mass. Gen. Laws ch. 244, § 35A.[1]  Pursuant to the

statutory scheme, a mortgagee that seeks to accelerate or foreclose on a mortgage must notify the

mortgagor of his or her right to cure.  The notice must be "given by the mortgagee to the

mortgagor," and must provide the mortgagor with information including the nature of the

default, the date by which the mortgagor may cure the default, the name and address of the

mortgagee, and the telephone number for a representative of the mortgagee whom the mortgagor

may contact.  Mass. Gen. Laws ch. 244 § 35A(h).

Here, the assignment of the mortgage clearly comports with the statutory requirements.

Mass. Gen. Laws ch. 183, § 54B instructs that the assignment of mortgage by a "person

purporting to hold the position of . . . vice president,. . . secretary, . . . or other similar office or

position, including assistant to any such office or position, of the entity holding such mortgage"

and executed before a notary public is binding and entitled to be recorded.  On May 6, 2009,

before a notary public, a person purporting to be assistant secretary and vice president for MERS

assigned Larivaux and Fayette's mortgage to OneWest Bank.  That renders the assignment

binding.  *See Kiah v. Aurora Loan Servs., LLC*, 2011 WL 841282 (D. Mass. Mar. 4, 2011).

Indeed, plaintiff does not challenge the assignment of the mortgage, merely the assignment of

the note.  But whether OneWest Bank held the note when it foreclosed on plaintiff's property in

---

[1] All citations to Mass. Gen. Laws ch. 244 § 35A in this section cite to that law as in effect in 2009; the statute has since been amended.

May 2009 is not material.  The law at that time did not require a mortgagee also to hold the note

in order to exercise the statutory power of sale.  *See Eaton*, 462 Mass. at 584, 588-89; *see also*

*Stephens-Martin v. Bank of New York Mellon Trust Co.*, 2013 WL 5508415, at *8 (Mass. Land

Ct. Oct. 1, 2013) (holding that, in foreclosure proceeding commenced prior to *Eaton*, mortgagee

need not have held the mortgage note).

　　　　However, to prove a lawful foreclosure, defendants also must demonstrate compliance

with the procedures of § 35A.  The statute provides that the written notice to cure identify the

"mortgagee, or anyone holding thereunder."  Mass. Gen. Laws ch. 244, § 35A(h)(4).  The term

"mortgagee" is not defined in the statute.  Courts have disagreed as to whether a servicer of a

mortgage qualifies as a "mortgagee" under § 35A.  *Compare Bravo–Buenrostro v. One West*

*Bank*, 2011 WL 10818677, at *6 (Mass. Super. Ct., May 31, 2011) (holding that, under § 35A,

the "'mortgagee, or anyone holding thereunder' language refers exclusively to the current holder

of the mortgage"); *Silva v. Deutsche Bank Nat. Trust Co.*, 2012 WL 6016813 (Mass. Super. Nov.

14, 2012) (holding that "strict compliance" with 35A includes providing the name and address of

the mortgagee, not the creditor or servicer); *Bank of New York Mellon v. Almeida*, No.

12-SU-345 (Mass. Super. July 25, 2013); *Nat'l Mortgage, LLC v. Culhane*, No. 1356-SU-0726

(Mass. Super. Sept. 24, 2013) *with Foregger v. Residential Credit Solutions, Inc.*, 2013 WL

3208596, at*12-13 (D. Mass. June 21, 2013) ("mortgagee" includes "mortgage servicers and

other entities acting on behalf of the owner"); *Orellana v. Deutsche Bank Nat. Trust Co.*, 2013

WL 5348596, at *10 (D. Mass. Aug. 30, 2013) (holding that "mortgagee" includes mortgage

servicers); *Sheehy v. Consumer Solutions 3, LLC*, 2013 WL 5295689, at *2 (D. Mass. Sept. 17,

2013) (same); *HSBC Bank USA, Nat'l Ass'n v. Brown*, 12H84SP003218 (Mass. Hous. Ct. July

16, 2013) (same).

The Massachusetts Division of Banks has promulgated regulations pursuant to § 35A.  In

those regulations, the term "mortgagee" is defined as

> an entity to whom property is mortgaged, the mortgage credit or lender including,
> but not limited to, mortgage servicers, lenders in a mortgage agreement and any
> agent, servant, or employee of the mortgagee or any successor in interest or
> assignee of the mortgagee's rights, interests, or obligations under the mortgage
> agreement.

209 C.M.R. 56.02.  In other words, the regulations make clear that the term "mortgagee" in

Section 35A includes not only the owner of the mortgage, but also mortgage servicers and other

entities acting on behalf of the owner.

The Division of Banks has also created a Frequently Asked Questions ("FAQ") section

on its website that states the following:

> Q.  The regulations do not explicitly allow for the mortgagee or servicer to send
> the Notice on letterhead.  Is it okay for the lender to send the Notice on
> letterhead?
>
> A:  Yes.  A mortgagee or mortgage servicer or any entity authorized to act on
> behalf of the mortgagee may send the Notice on its letterhead.
>
> Q:  Is it acceptable for the servicer to put its name in the Notice everywhere the
> word "Mortgagee" appears?
>
> A.  Yes.  It is acceptable for the servicer or any entity authorized to act on behalf
> of the mortgagee to put its name in every space that references mortgagee.  The
> references should be consistent throughout the Notice.

*See* Frequently Asked Questions on 150/90 Day Right to Cure Notice, http://www.mass.gov/

ocabr/government/oca-agencies/dob-lp/dob-news-archive/2012-dob-news/faq04042012.html

(last visited November 20, 2013).

This Court agrees with the interpretation of the Division of Banks.  That interpretation

avoids a hyper-technical reading of the statute, and also comports with common sense.[2]  Here,

the letter sent to plaintiff named the correct servicer, IndyMac Federal Bank, although the actual

mortgagee was MERS.  The notice complies with ch. 244, § 35A.[3]  Accordingly, summary

judgment will be granted in favor of defendants.

### III.   Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

**So Ordered.**

         /s/ F. Dennis Saylor
         F. Dennis Saylor IV
         United States District Judge

Dated:  November 20, 2013

---

[2] The statute requires that the § 35A notice include "the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact . . . ."  Mass. Gen. Laws ch. 244 § 35A(c)(4).  The clear purpose of that provision is to give the borrower a point of contact so that the borrower can contest the default, challenge the lender's calculations, obtain additional information, or otherwise attempt to resolve the issue.  Institutional mortgage lenders—like all non-human entities—necessarily act through agents.  Whether the agent in question is a separate entity (such as a servicer), an employee of the lender, or has some other relationship with the lender is not likely to be significant in this context, so long as the agent can effectuate the statute's purpose by providing the homeowner a meaningful opportunity to contest that a default had occurred or the calculation of the amount owed.  *See Silva v. Deutsche Bank Nat. Trust Co.*, 2012 WL 6016813, at *3 (Mass. Super. Nov. 14, 2012).

[3] Plaintiff also contends that the legislative history of the statute supports a restrictive reading.  The House version of the bill required disclosure of the name of the "mortgagee" only; the Senate version permitted the disclosure of the "mortgagee or servicer."  Mass. H.R. Jour. 10/18/2007; Mass. S. Jour. 10/25/2007.  After a Conference Committee to reconcile the two versions, the final version—later signed into law—required notice of the mortgagee, deleting all references to servicers.  Mass. H.R. Jour., 11/20/2007.  But as the court noted in *HSBC Bank USA, Nat'l Ass'n v. Brown*, 12H84SP003218, at *16 n.12, the legislative history is vague and ambiguous; that the legislature equally could have deleted "or servicer" because "the term 'mortgagee' standing alone" encompassed all agents of mortgagees, including servicers.